UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ANTHONY CONTE,

                           Plaintiff,

      -against-

COUNTY OF NASSAU, NEW YORK;
BOB EMMONS, Individually and as Assistant
District Attorney of Nassau County, New York;
PHILIP WASILAUSKY, Individually and as
Assistant District Attorney of Nassau County,
New York; WILLIAM WALLACE, Individually
and as Assistant District Attorney of Nassau County,
New York; CHRISTINA SARDO, Individually
and as Assistant District Attorney of Nassau
County, New York; MIKE FALZARNO,
Individually and as Special Investigator for the
Office of the District Attorney of Nassau County,
New York; RHODA ZWICKER, Individually and as
a clerk in the Nassau County District Attorney's
Office, Nassau County, New York; TEFTA
SHASKA, Individually and as a Detective for the
Police Department of the City of New York; LARRY
GUERRA and "JOHN" and "JANE" DOES, 1-20,
Unknown Individuals and Employees of the Nassau
County District Attorney's Office,

                           Defendants.
-----------------------------------------------------------------X

                                MEMORANDUM
                                OPINION AND ORDER

                                CV 06-4746 (JFB) (ETB)

       Before the court is the motion of the defendants, County of Nassau (the "County"), Bob

Emmons ("Emmons"), Philip Wasilausky ("Wasilausky"), William Wallace ("Wallace"),

Christina Sardo ("Sardo") and Mike Falzarno ("Falzarno") (collectively, the "County

defendants"), seeking a protective order for more than seventy (70) documents withheld in

response to document requests by the plaintiff, Anthony Conte ("plaintiff" or "Conte").[1]  The

County Defendants assert that the challenged documents are subject to one or more evidentiary

privileges and are therefore exempt from disclosure.  For the following reasons, the County

defendants' motion is granted in part and denied in part.


<u>BACKGROUND</u>

Familiarity with the underlying facts of this action is presumed.  Plaintiff commenced

this action, pro se, on August 30, 2006, alleging numerous federal and state claims, arising out of

an allegedly unlawful investigation and prosecution.  Plaintiff has amended his Complaint twice

since the commencement of this action: first, on January 25, 2007 and again on April 5, 2007.

By Memorandum and Order, dated March 31, 2008, Judge Bianco, the district judge

assigned to this action, dismissed all claims against the defendants City of New York, the New

York City Police Department, the Nassau County District Attorney's Office and individual

defendants Denis Dillon, Katherine Rice, Lisa Bland and Robert Vinal.  See Conte v. County of

Nassau, No. 06-CV-4746, 2008 U.S. Dist. LEXIS 25694, at *102 (E.D.N.Y. Mar. 31, 2008).

Judge Bianco also dismissed plaintiff's 42 U.S.C. § 1985 claim, 42 U.S.C. § 1986 claim, due

process and equal protection claims, and Lanham Act claims, as well as all claims against the

---

[1]  Although there are seventy-nine (79) documents listed on the Revised Privilege Log submitted by the County defendants, dated March 13, 2009, six (6) of the documents listed therein contain notations that either the claim of privilege has been withdrawn or there is no privilege claimed.  (Revised Privilege Log Doc. Nos. 25, 49, 50, 59, 66, 71.)  The Court assumes that since the County defendants are not claiming any privilege with respect to these documents, they have been produced to the plaintiff.  To the extent that they have not already done so, the County defendants are directed to produce Document Numbers 25, 49, 50, 59, 66 and 71 to the plaintiff within ten (10) days of the date of this Order.

individual defendants in their official capacities.  See id.  Pursuant to the March 31, 2008

Memorandum and Order of Judge Bianco, discovery is proceeding as to the following causes of

action: "the Section 1983 claims for false arrest/false imprisonment, malicious prosecution and

violations of the First Amendment, the Section 1983 conspiracy claim, the Monell claim, the

abuse of process claim, and the state law claims."[2]  Id.  The plaintiff's claim against the County

defendants - as to the malicious prosecution and false arrest/imprisonment causes of action - is

that although they were in possession of evidence showing the absence of probable cause to

pursue a criminal investigation and/or prosecution, they nonetheless continued with same based

solely on an office policy or practice of prosecution due to the suspect's prior felony conviction

for fraud.

In response to various document requests from the plaintiff, the County defendants assert

that more than seventy (70) of the documents requested are exempt from disclosure based on the

following privileges: (1) the work product doctrine; (2) the deliberative process privilege; (3) the

law enforcement privilege; and, (4) a privilege for materials received pursuant to grand jury

subpoenas.  The County defendants submitted a Revised Privilege Log, listing the documents

and the privileges claimed, in support of their position.  Plaintiff objects to the County

defendants' assertions of privilege and seeks production of all of the requested documents.

---

[2]  The state law tort claims include the following: (1) tortious interference with
contractual relations; (2) defamation; (3) injurious falsehood; and, (4) intentional infliction of
emotional distress.  (2d Am. Compl. ¶¶ 161-96, 214-21.)

DISCUSSION

I.     Attorney Work Product

The work-product doctrine, reflected in Federal Rule of Civil Procedure 26(b)(3), "offers qualified immunity from discovery for documents 'prepared in anticipation of litigation or for trial.'"  In re Kidder Peabody Sec. Litig., 168 F.R.D. 459, 462 (S.D.N.Y. 1996) (quoting Bowne v. Ambase Corp., 150 F.R.D. 465, 471 (S.D.N.Y. 1993)).  This doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries."  United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting Hickman v. Taylor, 329 U.S. 495, 510-11 (1947)).  The party asserting the protection of the work-product privilege bears the burden of establishing that such protection is warranted.  See Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP, No. 03 Civ. 5560, 2008 U.S. Dist. LEXIS 77018, at *29 (S.D.N.Y. Oct. 2, 2008); In re Kidder Peabody, 168 F.R.D. at 462.

"[T]hree conditions must be met in order to earn work product protection.  The material must (1) be a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representatives."  Kingsway, 2008 U.S. Dist. LEXIS 77018, at *29 (citing cases) (alteration in original).  With respect to the second element of the test, the Second Circuit has explained that the appropriate inquiry is whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  Adlman, 134 F.3d at 1202 (quotation omitted).  Accordingly, the "threshold issue" when determining whether the work-product doctrine is applicable in a given case requires an inquiry into "the

-4-

primary motivational purpose behind the creation of the document." Kingsway, 2008 U.S. Dist. LEXIS 77018, at *31 (citing cases)

Pursuant to Rule 26(b)(3), even documents that are protected by the work-product doctrine may be discoverable where the "discovering party demonstrates a sufficiently pressing need for the data." In re Kidder Peabody, 168 F.R.D. at 462 (quotation omitted). To satisfy this standard, the discovering party must establish that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A); see also Adlman, 134 F.3d at 1197; In re Kidder Peabody, 168 F.R.D. at 462.

Even where this burden has been satisfied, however, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," Fed. R. Civ. P. 26(b)(3)(B), commonly referred to as "opinion work product." Adlman, 134 F.3d at 1197. "Special treatment for opinion work product is justified because, 'at its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" Id. at 1197 (quoting United States v. Nobles, 422 U.S. 225, 238 (1975)).

Here, the County defendants claim work-product protection for sixty-one (61) documents listed on the Revised Privilege Log.[3] Such documents consist of the following categories:

(a) four (4) grand jury subpoenas (Doc. Nos. 1, 5, 6, and 7);

---

[3] For some of these documents, more than one privilege is listed and will be discussed infra.

(b) three (3) sets of handwritten notes by defendant Assistant District Attorney ("ADA") Wallace (Doc. Nos. 2-4);

(c) a memo from the Nassau County District Attorney's ("DA") office to Joseph Cutolo, who is not identified, regarding a "bad check complaint" (Doc. No. 13);

(d) fifteen (15) documents pertaining to research conducted by defendant Falzarno, a Special Investigator for the DA's office, as well as his memos, handwritten notes, emails and contact lists (Doc. Nos. 21, 47, 64-65, 67-70, 72-75, 77-79);

(e) two (2)pages of a document entitled "Smartshopper Guide" (Doc. No. 22);

(f) a document listed as "NYS Dept. of State" regarding I Media Corp. (Doc. No. 23);

(g) two (2) "print-outs" from computers in the DA's office regarding plaintiff (Doc. Nos. 24, 48);

(h) eleven (11) inter-departmental memos within the DA's office concerning plaintiff and I Media Corp. (Doc. Nos. 26-29, 40-42, 44-46, 51.)

(i) nine (9) lists of individuals who filed complaints against plaintiff, some of which contain handwritten notes by Wallace (Doc. Nos. 30-38);

(j) two (2) timelines of events created by the DA's office (Doc. Nos. 39, 58);
(k) a document entitled "Final Agency Determination" created by defendant Emmons (Doc. No. 43);

(l) a "message slip" regarding plaintiff (Doc. No. 52);

(m) three (3) sets of notes and a "file log sheet" regarding "telephone calls" (Doc. Nos. 53-55);

(n) three (3) documents entitled "Investigative Reports Index Sheet" (Doc. Nos. 56, 63, 76);

(o) a "Unit Complaint Log" (Doc. No. 57);

(p) a document entitled "New Case Assignments" (Doc. No. 60);

(q) an article by defendant Falzarno entitled "Bachelorette-hood" (Doc. No. 61); and,

(r) a "note sheet" regarding "distributors" (Doc. No. 62).

The County defendants assert that plaintiff has not demonstrated a substantial need for the foregoing documents or that he is unable to obtain them from any other source. In their Reply Memorandum of Law, however, the County defendants argue that even if plaintiff is found to have demonstrated a substantial need for the foregoing documents, at a minimum, a protective order should be granted with respect to five documents (Nos. 40, 41, 42, 45 and 46), which they assert are "opinion work product." (Def. Reply Mem. of Law 7-8.) These documents are all inter-departmental memos from defendant Wallace to defendant Emmons, who is the Bureau Chief of the Government and Consumer Frauds Bureau within the DA's office.

Plaintiff argues that he needs the foregoing documents to effectively prosecute his case and that he is unable to obtain them from any other source. This appears to be correct. Plaintiff brings this action alleging, among other things, malicious prosecution and abuse of process. In their Answer, the County defendants assert numerous affirmative defenses, including that at all times, they were acting without malice and with reasonable and proper cause (Ans. Fifth Aff. Def.) The documents in question appear to pertain directly to this affirmative defense. By asserting such a defense, the County defendants have effectively placed the contested documents in issue in this action. "[A] party cannot . . . affirmatively rely on privileged [documents] to support its claim or defense and then shield the underlying [documents] from scrutiny by the opposing party." Sims v. Blot, 534 F.3d 117, 132 (2d Cir. 2008) (quoting In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000)); see also Kidder, Peabody & Co. v. IAG Int'l Acceptance Group, N.V., No. 94 Civ. 4725, 1997 U.S. Dist. LEXIS 7108, at *9 (S.D.N.Y. May 20, 1997) (stating that the "work product privilege[] 'cannot at once be used as a shield and a

sword'") (quoting <u>United States v. Bilzerian</u>, 926 F.2d 1285, 1292 (2d Cir. 1991)).  As a result, plaintiff is entitled to discovery of these documents, provided they are not subject to one of the other privileges discussed below.[4]

However, as the County defendants correctly point out, the court is required to shield from disclosure those documents that can legitimately be characterized as "opinion work product."  Accordingly, the County defendants are directed to submit for <u>in camera</u> review those documents asserted to be opinion work product - Document Numbers 40, 41, 42, 45 and 46 - which are listed on the Revised Privilege Log as inter-departmental memos within the Nassau County District Attorney's Office.  <u>See</u> <u>ACLU v. DOD</u>, 389 F. Supp. 2d 547, 567 (S.D.N.Y. 2005) ("[W]hen a court is not able to resolve to its own satisfaction an agency's determination to withhold documents, it may . . . conduct an <u>in camera</u> review.").  There are also six other inter-departmental memos listed on the Revised Privilege Log (Doc. Nos. 26-29, 44 and 51) for which the work product privilege is claimed.  Although the County defendants do not include these documents in their Reply Memorandum of Law with respect to opinion work product, out of an excess of caution, these documents shall be submitted for <u>in camera</u> review as well.  <u>See</u> <u>Estate of Fisher v. C.I.R.</u>, 905 F.2d 645, 651 (2d Cir. 1990) (stating that "the decision whether to engage in <u>in camera</u> review rests in the sound discretion of the district court").  Once the Court has reviewed the submitted documents, it will determine whether the County defendants are entitled to a protective order on the basis of opinion work product.

---

[4]  In addition, many of the documents listed on the Revised Privilege Log do not appear to even warrant work product protection or do not contain enough of a description to satisfy the County defendants' burden of demonstrating that they are protected.  (<u>See</u> Doc. Nos. 22-23, 52, 60-62.)

-8-

II.    The Deliberative Process Privilege

The deliberative process privilege is a "sub species of [the] work-product privilege that 'covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" Tigue v. United States, 312 F.3d 70, 76 (2d Cir. 2002) (quoting Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001)); see also MacNamara v. City of New York, 249 F.R.D. 70, 81 (S.D.N.Y. 2008).  This "privilege serves to protect the deliberative process itself, not merely documents containing deliberative material." MacNamara, 249 F.R.D. at 81 (quotation omitted).  "Thus, a document may be deemed 'deliberative' not only where it explicitly weighs competing policy alternatives, but also where it contains a preliminary outline of a policy prepared by lower-ranking government officials for presentation to a superior with final policymaking authority." Id.

The party seeking to invoke the deliberative process privilege bears the burden of demonstrating two requirements: (1) the document is "predecisional" and (2) it is "deliberative." Tigue, 312 F.3d at 76 (citing cases); Nat'l Congress for Puerto Rican Rights v. City of New York, 194 F.R.D. 88, 92 (S.D.N.Y. 2000) (citing Hopkins v. United States Dep't of Housing & Urban Dev., 929 F.2d 81, 84 (2d Cir. 1991)).  "A document is predecisional when it is prepared in order to assist an agency decisionmaker in arriving at his decision." Tigue, 312 F.3d at 80 (quoting Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 2000)); Nat'l Congress for Puerto Rican Rights, 194 F.R.D. at 92 (same).  Accordingly, "the privilege protects recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Nat'l

Congress for Puerto Rican Rights, 194 F.R.D. at 92 (quotation omitted); see also Tigue, 312 F.3d at 80. The privilege does not apply, however, to a document that is "merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented judgment." Tigue, 312 F.3d at 80 (quoting Grand Cent. P'ship, 166 F.3d at 482).

A document is considered deliberative where it is "actually . . . related to the process by which policies are formulated." Nat'l Congress for Puerto Rican Rights, 194 F.R.D. at 92 (quoting Hopkins, 929 F.2d at 84) (internal quotation marks and additional quotation omitted). To this end, courts are "particularly protective of draft documents because they are inherently deliberative in nature." LNC Investments, Inc. v. Republic of Nicaragua, No. 96 Civ. 6360, 1997 WL 729106 at *1-2 (S.D.N.Y. Nov. 21, 1997) (citing Lead Indus. Assoc. v. OSHA, 610 F.2d 70, 86 (2d Cir. 1979)); see also MacNamara, 249 F.R.D. at 78 ("[D]raft documents, by their very nature, are typically predecisional and deliberative."). "The privilege does not, as a general matter, extend to purely factual material." Nat'l Congress for Puerto Rican Rights, 194 F.R.D. at 93 (quoting Hopkins, 929 F.2d at 84); see also MacNamara, 249 F.R.D. at 78 (stating that "a document is not 'deliberative' where it concerns 'purely factual' information regarding, for example, investigative matters or factual observations"). "Thus, factual findings and conclusions, as opposed to opinions and recommendations, are not protected." MacNamara, 249 F.R.D. at 78 (quoting E.B. v. N.Y. City Bd. of Educ., 233 F.R.D. 289, 292 (E.D.N.Y. 2005)).

Where an agency's deliberations "are among the central issues in the case," however, the deliberative process privilege may be inapplicable. Natural Res. Defense Council, Inc. v. Fox, No. 94 Civ. 8424, 1998 U.S. Dist. LEXIS 4575, at *13 (S.D.N.Y. Apr. 3, 1998). Specifically, [w]here the deliberations of government are genuinely at issue, privileges designed to shield the

deliberative process from public scrutiny 'may not be raised as a bar against disclosure . . . .'" Id. (quoting Burka v. N.Y. City Transit Auth., 110 F.R.D. 660, 667 (S.D.N.Y. 1986)). The deliberative process privilege is also not available "when the factors shaping decisions made by government officials are at issue . . . ." Natural Res. Defense Council, 1998 U.S. Dist. LEXIS 4575, at *13-14 (citing Burka, 110 F.R.D. at 667).

Finally, the deliberative process privilege may only be claimed "by the head of the agency which has control over the material, after personal consideration of the allegedly privileged nature of the information." Rao v. N.Y. City Health and Hosp. Corp., No. 89 Civ. 2700, 1993 WL 465342, at *1 (S.D.N.Y. Nov. 8, 1993) (quotation omitted); see also Morrissey v. City of New York, 171 F.R.D. 85, 89 n.3 (S.D.N.Y. 1997) ("One of the prerequisites of invoking the 'deliberative process' privilege is that the claim be made by the head of the agency after personal consideration of the allegedly privileged material."); Equal Opportunity Comm'n v. Am. Int'l Group, Inc., No. 93 Civ. 6390, at *4 (S.D.N.Y. July 18, 1994) ("The claim of deliberative process privilege must be raised by the head of the agency after personally considering the material in question."). Some courts have held that this power may also be "delegated to a subordinate, within the agency, with high authority, as long as such delegation is within guidelines established by the agency head." Rao, 1993 WL 465342, at *1; see also Herman v. The Crescent Publ'g Group, Inc., No. 00 Civ. 1665, 2000 U.S. Dist. LEXIS 13738, at *8 (S.D.N.Y. Sept. 20, 2000) ("The deliberative process privilege may only be claimed by the head of the agency seeking to withhold disclosure or a subordinate designee of high authority."). The person claiming the privilege on behalf of the agency must also "provide 'precise and certain' reasons for asserting confidentiality." Herman, 2000 U.S. Dist. LEXIS 13738, at *9

(quoting <u>LNC Investments</u>, 1997 WL 729106, at *2); <u>see also</u> <u>Rao</u>, 1993 WL 465342, at *1

(stating that "the agency must provide 'precise and certain' reasons for preserving the

confidentiality of the information").  Where this requirement is not complied with, the invoking

party's claim of privilege will fail.  <u>See, e.g.</u>, <u>Morrissey</u>, 171 F.R.D. at 89 n.3 (rejecting

defendants' claim of deliberative process privilege due, in part, to the failure of the agency head

to state in his affidavit that he had personally reviewed the documents claimed to be privileged).

Here, the County defendants claim the deliberative process privilege with respect to the

following:

> (a) nine (9) inter-departmental memos from defendant Wallace to defendant
> Emmons regarding the complaints against plaintiff (Doc. Nos. 26-29, 40-42, 45-
> 46); and,
>
> (b) the "Final Agency Determination" made by Robert Emmons, the Bureau Chief
> of the Government and Consumer Frauds Bureau within the DA's office (Doc.
> No. 43.)

The inter-departmental memos are possible opinion work product, which will be submitted for <u>in</u>

<u>camera</u> review, as discussed above, and therefore it is not necessary to consider whether they are

subject to the deliberative process privilege at this time.  In the event the Court determines that

the inter-departmental memos are not opinion work product, it will consider whether they are

subject to the deliberative process privilege at that time.  With respect to the "Final Agency

Determination," however, the defendants claim of privilege is denied.

As an initial matter, the claim of deliberative process privilege here is not being made by

the head of the agency, which would be the District Attorney of Nassau County.  Instead, the

only affidavit received is from ADA Wallace, who is also a defendant in this action.  Nowhere in

that affidavit does it state that Wallace has been designated the authority to claim the deliberative

process privilege.  Accordingly, the application is procedurally defective.

Moreover, by its very nature, a Final Agency Determination is neither predecisional or deliberative, the two requirements necessary to invoke the deliberative process privilege.  It is the final conclusion reached by the Bureau Chief within the DA's office, based on the inter-departmental memos submitted to him by Wallace.  Final decisions are not considered privileged.  See Azmy v. United States DOD, 562 F. Supp. 2d 590, 604 (S.D.N.Y. 2008) (finding that the "final decision of the agency . . . falls outside the deliberative process privilege"); MacNamara, 249 F.R.D. at 78 (stating that "conclusions" are "not protected"); Manzi v. DiCarlo, 982 F. Supp. 125, 131 (E.D.N.Y. 1997) (stating that "final decisions" are "not deliberative in nature").

Based on the foregoing, Document Number 43, which is the DA's office's "Final Agency Determination" with respect to plaintiff, is not exempt from disclosure under the deliberative process privilege.  Accordingly, the County defendants are directed to produce Document Number 43 to plaintiff within ten (10) days of the date of this decision.

III.     The Law Enforcement Privilege

The purpose of the law enforcement privilege "is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation."  MacNamara, 249 F.R.D. 70 at 78 (quoting In re Dep't of Investigation, 856 F.2d 481, 484 (2d Cir. 1988)); Morrissey, 171 F.R.D. at 90 (same).  "In order to assert a claim of privilege against disclosure of

police materials to a plaintiff raising federal civil rights claims . . ., the [party resisting disclosure] must do more than alert the court to the [relevant privilege] or the generalized policies which support it." MacNamara, 249 F.R.D. at 78-79 (quoting Fountain v. City of New York, No. 03 Civ. 4526, 2004 U.S. Dist. LEXIS 7539, at *9 (S.D.N.Y. May 3, 2004)) (second alteration in original). Rather, the defendant "must make a substantial threshold showing[] that there are specific harms likely to accrue from disclosure of specific materials . . . ." MacNamara, 249 F.R.D. at 79 (quoting Fountain, 2004 U.S. Dist. LEXIS, at *9).

Numerous courts have held that "the focus of the law enforcement privilege is to protect information relating to investigations." See, e.g., Fountain, 2004 U.S. Dist. LEXIS 7539, at *12; Morrissey, 171 F.R.D. at 90. "However, an investigation need not be ongoing for the law enforcement privilege to apply as 'the ability of a law enforcement agency to conduct *future investigations* may be seriously impaired if certain information is revealed.'" MacNamara, 249 F.R.D. at 79 (quoting Nat'l Congress for Puerto Rican Rights, 194 F.R.D. at 95 (emphasis in original); see also Fountain, 2004 U.S. Dist. LEXIS 7539, at *13 (stating that "an investigation does not need to be ongoing in order for the privilege to be applicable"); Morrissey, 171 F.R.D. at 90 ("This is not to say, of course, that an investigation needs to be ongoing in order for the privilege to be applicable.").

Since the law enforcement privilege is a "qualified" privilege, "when the existence of [the] privilege is established, there is a need to balance the public interest in nondisclosure against the need of the particular litigant for access to the privileged information." MacNamara, 249 F.R.D. at 79 (quotation omitted). In balancing these interests, the burden of persuasion resides with the party seeking to prevent disclosure. See id. (citing King v. Conde, 121 F.R.D.

180, 190-91 (E.D.N.Y. 1988)).  Factors favoring disclosure are the relevance of the requested

materials and their importance to the plaintiff's case, the strength of the plaintiff's case, and the

importance to the public interest.  See King, 121 F.R.D. at 195-96.  Factors disfavoring

disclosure that a court should consider are the threat to police officers' safety, the invasion of

privacy, the weakening of law enforcement programs, any chilling effect on internal

investigative candor and citizen complainant candor, and state privacy law.  See id. at 191-95.

The County defendants assert that the following documents are protected by the law

enforcement privilege:

> (a) fifteen (15) documents pertaining to research conducted by defendant
> Falzarno, a Special Investigator for the DA's office, as well as his memos,
> handwritten notes, emails and contact lists (Doc. Nos. 21, 47, 64-65, 67-70, 72-
> 75, 77-79)
>
> (b) two (2) pages of a document entitled "Smartshopper Guide" (Doc. No. 22);
>
> (c) a document listed as "NYS Dept. of State" regarding I Media Corp. (Doc. No.
> 23);
>
> (d) nine (9) lists of individuals who filed complaints against plaintiff, some of
> which contain handwritten notes by Wallace (Doc. Nos. 30-38);[5]
>
> (e) a document listed as "Print out NCDAO computer Brief Case Summary"
> regarding plaintiff (Doc. No. 48);
>
> (f) three (3) documents entitled "Investigative Reports Index Sheet" (Doc. Nos.
> 56, 63, 76);

---

[5]  The County defendants list the privilege asserted with respect to these documents as
"identities of third parties."  (Revised Privilege Log Doc. Nos. 30-38.)  The Court assumes that
since a primary purpose of the law enforcement privilege is to protect the privacy interests of
individuals involved in an investigation, as well as the confidentiality of sources and witnesses,
the defendants meant to include these documents under the law enforcement privilege.
Accordingly, the Court will consider whether they are shielded from disclosure under that
privilege.

(g) a document entitled "New Case Assignments" (Doc. No. 60); and,

(h) an article by defendant Falzarno entitled "Bachelorette-hood" (Doc. No. 61).

As an initial matter, only the entries on the Revised Privilege Log pertaining to: (a) the fifteen (15) documents consisting of the investigator's research, memos, handwritten notes, emails and contact lists; (b) the complainant lists; and (c) the three (3) "Investigative Reports Index Sheets" contain enough information to warrant an inquiry as to whether or not they are subject to the law enforcement privilege. The remaining items - Document Numbers 22, 23, 48, 60 and 61 - are so vague, it is impossible to tell what they even are, let alone if they are privileged. "A privilege log must provide 'sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure.'" Grand Rivers Enter. Six Nations v. King, No. 02 Civ. 5068, 2009 U.S. Dist. LEXIS 2045, at *50 (Jan. 9, 2009) (quoting United States v. Constr. Prods. Research, 73 F.3d 464, 473 (2d Cir. 1996)). Where a party submits a "deficient" privilege log, "the claim of privilege may be denied." Grand Rivers Enter., 2009 U.S. Dist. LEXIS 2045, at *50 (citing Constr. Prods. Research, 73 F.3d at 473). For these reasons, Document Numbers 22, 23, 48, 60 and 61 shall be produced to plaintiff.

With respect to the documents prepared by the investigator, Falzarno, the affidavit from ADA Wallace simply states that disclosing these documents would "disclose law enforcement techniques and procedures, would violate the confidentiality of sources, would not protect witnesses and law enforcement personnel, and would violate the privacy of individuals involved in an investigation." (Wallace Aff. ¶ 7.) This is nothing more than a recitation of the law enforcement privilege. Nowhere in Wallace's affidavit are there specifics as to how and why disclosing these documents would jeopardize or interfere with current or future investigations

and prosecutions. Nor are any such specific harms detailed in the defendants' memoranda of law. Rather, the memoranda of law focus on how plaintiff has failed to establish a need for these documents. However, the initial burden is on defendants to "make a substantial threshold showing[] that there are specific harms likely to accrue" from the disclosure of the requested materials in order to establish that they are entitled to invoke the law enforcement privilege. MacNamara, 249 F.R.D. at 79 (quoting Fountain, 2004 U.S. Dist. LEXIS, at *9). The defendants have failed to carry this burden.

Moreover, a balancing of the interests for and against disclosure weighs in favor of plaintiff. As stated above, two of the causes of action alleged by plaintiff are malicious prosecution and abuse of process. These documents are directly relevant and important to the issue of whether or not the DA's office sought out complainants against plaintiff, as he alleges. They are also relevant to the affirmative defense pleaded by defendants that they had probable cause to investigate and prosecute plaintiff. Since the "normal presumption" in civil cases is "in favor of broad discovery," defendants' "case for non-disclosure . . . must be extremely persuasive." King, 121 F.R.D. at 195. Defendants have not met that burden.

Accordingly, all of the documents claimed to be subject to the law enforcement privilege or listed as "identities of third parties" are to be disclosed to plaintiff within ten (10) days of the date of this decision.


IV.    Grand Jury Materials

The final privilege that the County defendants assert is a privilege for certain grand jury subpoenas that were issued and the materials received pursuant to those grand jury subpoenas.

Such documents include the following:

>(a) four (4) grand jury subpoenas (Doc. Nos. 1, 5-7);
>
>(b) submissions from various entities to the DA's office sent in response to the subpoenas, which include facsimiles, letters, copies of bank statements, and copies of checks (Doc. Nos. 8-12, 16-20); and,
>
>(c) a "Memorandum with Grand Jury Subpoena" from Rhoda Zwicker of the DA's office to the Chief of the Indictment Bureau, Elise McCarthy (Doc. No. 14).

The County defendants assert that under New York Criminal Procedure Law § 190.25, these materials are expressly prohibited from disclosure absent a court order.

Defendants are correct that under New York law, the secrecy of grand jury testimony is protected by statute, see N.Y. Crim. Proc. Law § 190.25(4)(a), and "[a] public prosecutor may not disclose the nature or substance of any Grand Jury testimony, [evidence, or any decision, result or other matter attending a grand jury proceeding] . . . except in the lawful discharge of [his] duties or upon written order by the court." Restivo v. Nassau County, No. CV 06-6720, 2008 U.S. Dist. LEXIS 57592, at *5-6 (E.D.N.Y. July 28, 2008) (quoting People v. Sergio, 847 N.Y.S.2d 904 (N.Y. Sup. Ct. 2007)). However, "the applicable body of privilege law is federal," not state, "although the court may take appropriate note of compelling state interests embodied in state law." In re Montauk Oil Transp. Corp., No. 90 Civ. 5702, 1992 WL 131770, at *1 (S.D.N.Y. June 2, 1992) (citing King, 121 F.R.D. at 187-88; see also Von Bulow v. Von Bulow, 811 F.2d 136, 141 (2d Cir. 1987) (citing Fed. R. Evid. 501). In this case, federal law concerning the confidentiality of grand jury proceedings is substantially similar to that of New York state law. See Fed. R. Crim. P. 6(e) (stating that "an attorney for the government, or any person to whom disclosure is made . . . shall not disclose matters occurring before the grand jury except as otherwise provided for in these rules").

As a threshold matter, however, plaintiff is not seeking to discover grand jury testimony or any evidence presented to the grand jury, since there was no such presentation. Rather, he is requesting the materials submitted to the DA's office in response to grand jury subpoenas. Accordingly, the court "must determine whether the requested disclosure reveals 'matters occurring before the grand jury' within the meaning of Rule 6(e)." United States v. Manko, No. 89 Cr. 91, 1997 U.S. Dist. LEXIS 2578, at *6 (S.D.N.Y. Mar. 10, 1997).

"Requests for documents subpoenaed by the grand jury evoke 'different[] and less exacting considerations' than requests for grand jury transcripts." Manko, 1997 U.S. Dist. LEXIS 2578, at *6 (quoting SEC v. Everest Mgmt., 87 F.R.D. 100, 105 (S.D.N.Y. 1980)) (alteration in original). "[T]he mere presentation of documents to a grand jury[] does not cloak them in secrecy." Manko, 1997 U.S. Dist. LEXIS 2578, at *6 (citing United States v. Lartey, 716 F.2d 955, 964 (2d Cir. 1983)). This is because documents produced to the grand jury "do not intrinsically reveal what transpired in the grand jury room." Everest Mgmt., 87 F.R.D. at 105. Accordingly, "documents should remain secret only if their disclosure reveals 'what is said or what takes place' in the grand jury room." Manko, 1997 U.S. Dist. LEXIS 2578, at *7 (quoting United States v. Interstate Dress Carriers, Inc., 280 F.2d 52, 54 (2d Cir. 1960)). "When documents are sought 'for [their] own sake' rather than to learn what transpired before the grand jury, and their release would not compromise the grand jury proceedings, Rule 6(e) does not preclude their disclosure." Manko, 1997 U.S. Dist. LEXIS 2578, at *7 (quoting DiLeo v. Comm'r of Internal Revenue, 959 F.2d 16, 19 (2d Cir. 1992)); see also In re Montauk Oil, 1992 WL 131770, at *2 (holding that ordinary business records "that are plainly relevant to the issues in [the] case . . . may not be shielded simply because they were the subject of a grand-jury

subpoena").

Since documents produced to a grand jury are not automatically exempt from disclosure based on the foregoing, documents that were never presented to the grand jury, but merely submitted to the DA's office in response to a grand jury subpoena, are entitled to even less protection. In at least one case involving this issue, the court held that "any requested documents in the possession of the District Attorney's office that were not used in the grand jury proceedings" were to be produced to the plaintiff, unless they were subject to another privilege. Ruther v. Boyle, 879 F. Supp. 247, 251 (E.D.N.Y. 1995). Here, the County defendants do not assert any other privilege with respect to the documents claimed to be protected as grand jury materials. Accordingly, the County defendants are directed to disclose those documents submitted to the DA's office pursuant to grand jury subpoenas to plaintiff within ten (10) days of the date of this decision.


<span style="text-align:center">C<span style="font-size:smaller">ONCLUSION</span></span>

For the foregoing reasons, the County defendants' motion for a protective order is granted in part and denied in part. The County defendants are directed to submit for in camera review Document Numbers 26-29, 40-42, 44-46, and 51, within ten (10) days of the date of this decision, for a determination as to whether those documents should be exempt from disclosure as opinion work product. In all other respects, the motion is denied and the County defendants are directed to produce all of the remaining documents identified on the Revised Privilege Log to plaintiff within ten (10) days of the date of this decision. The production shall be made pursuant to the terms of the confidentiality order, entered this same date.

**SO ORDERED:**

Dated: Central Islip, New York
       May 15, 2009

                                 /s/ E. Thomas Boyle
                                 E. THOMAS BOYLE
                                 United States Magistrate Judge