# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

№ 06-CV-4746 (JFB)(GRB)

---

ANTHONY CONTE,

Plaintiff,

VERSUS

COUNTY OF NASSAU, ET AL.,

Defendants.

---

**MEMORANDUM AND ORDER**
April 2, 2015

---

Joseph F. Bianco, District Judge:

*Pro se* plaintiff Anthony Conte ("plaintiff" or "Conte") filed the instant action against the County of Nassau ("the County"), Robert Emmons ("Emmons"), Philip Wasilausky ("Wasilausky"), William Wallace ("Wallace"), Christina Sardo ("Sardo"), Michael Falzarano ("Falzarano") (collectively, the "County defendants"), Tefta Shaska ("Shaska"), and Larry Guerra ("Guerra") (collectively, "defendants"), alleging federal claims under 42 U.S.C. § 1983 for false arrest, malicious prosecution, abuse of process, violation of the First Amendment, conspiracy, and *Monell* liability against the County. Plaintiff also asserted various state-law claims. After discovery, both parties moved for summary judgment. By Memorandum and Order of the Court dated September 30, 2010, the following claims survived summary judgment: (1) plaintiff's false arrest claim against Wasilausky; (2) plaintiff's abuse of process claim against all of the County defendants except Sardo; (3) plaintiff's *Monell* claim against the County; and (4) plaintiff's tortious interference with contract claim against all of the County defendants except Sardo and Shaska.

The matter was then tried before a jury, which found that (1) Wasilausky subjected plaintiff to an unlawful arrest; (2) none of the County defendants maliciously abused process in connection with plaintiff's arrest on a bad check charge or in connection with the issuance of Grand Jury subpoenas; and (3) Emmons, Wallace, and Falzarano tortiously interfered with plaintiff's

1

contractual relationships.[1] With respect to damages, the jury awarded $500.00 in compensatory damages and $26,000.00 in punitive damages against Wasilausky in connection with plaintiff's false arrest claim. As to plaintiff's tortious interference with contract claim, the jury awarded plaintiff $3,500.00 in compensatory damages for tortious acts which took place before June 1, 2005, and $700,000.00 in compensatory damages for tortious acts which took place on or after June 1, 2005. The jury also awarded punitive damages in connection with plaintiff's tortious interference with contract claim: $60,000.00 against Emmons; $443,000.00 against Wallace; and $175,000.00 against Falzarano.

After the trial, defendants Wasilausky, Wallace, Emmons, and Falzarano moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) on various grounds. The County defendants also moved for a new trial under Federal Rule of Civil Procedure 59. Plaintiff also moved under Rule 59 for a new trial on damages, arguing that the Court improperly denied him the opportunity to present to the jury certain evidence of damages associated with the tortious interference with contract claim.

By Memorandum and Order dated July 26, 2013, this Court granted the County defendants' Rule 50(b) motion — finding that Wasilausky was entitled to judgment as a matter of law on plaintiff's false arrest claim and Emmons, Falzarano, and Wallace were entitled to judgment as a matter of law on plaintiff's tortious interference with contract claim. Because the Court vacated the jury's verdict with respect to the tortious interference with contract claim and the false arrest claim, the Court denied both plaintiff and the County defendants' Rule 59 motions for new trials as moot.

On appeal to the Second Circuit, plaintiff argued that this Court erred by dismissing his state law claims against the City of New York; dismissing on summary judgment his defamation, injurious falsehoods, and intentional infliction of emotional distress claims against Wasilausky, Emmons, Wallace, Falzarano, and Shashka; dismissing his First Amendment claims against the County defendants on summary judgment; granting the defendants' post-judgment motions as a matter of law on his tortious interference with contract claims against Wallace, Emmons, and Falzarano; and denying his Rule 59 motion for a new damages trial.

On December 17, 2014, the Second Circuit vacated this Court's rulings granting judgment as a matter of law in favor of Wallace, Emmons, and Falzarano on Conte's claims for tortious interference with contractual relations, and remanded for consideration of plaintiff's Rule 59 motion for a new trial on damages on the claim. The Second Circuit affirmed this Court's rulings in all other respects.

Presently before this Court on remand from the Second Circuit is plaintiff's Rule 59 motion for a new trial on damages related to the tortious interference with contract claims.[2] For the reasons that follow, the Court denies plaintiff's motion for a new trial on damages.

---

[1] Plaintiff's *Monell* claim was dismissed as a matter of law at trial. (*See* Tr. 913-16.)

[2] In a separate order, the Court has set forth its basis for rejecting the County defendants' argument that the Court should consider on remand the alternative grounds raised by the County defendants' in their Rule 50(b) motion.

2

I. BACKGROUND

The Court detailed the factual background and procedural history of this case in the Memorandum and Order issued on July 26, 2013, and does not repeat those facts here. *Conte v. County of Nassau*, No. 06-CV-4746 (JFB) (ETB), 2013 WL 3878738, at *2-9 (E.D.N.Y. 2013). For the analysis of the specific issues raised by the present motion, the following background information is relevant.

A jury trial was held (and proceeded in two phases, liability and damages) before this Court, beginning on May 21, 2012, and concluding on June 11, 2012. On May 23, 2012, the County defendants filed an *in limine* motion to preclude plaintiff from offering expert valuation evidence at trial. (ECF No. 564.) Plaintiff requested permission for his expert, Barry L. Pulchin of the Metis Group, to testify and present a report estimating the loss Conte alleges he suffered as a result of the actions of the County defendants.[3] (*See* Pl.'s Letter dated Dec. 15, 2009, ECF No. 392 (attaching report created by plaintiff's business valuation and loss expert).) The report provides estimated valuation data regarding I Media, including projected revenue, and estimates I Media's projected lost earnings resulting from the allegations listed in Conte's Second Amended Complaint at $549,000,000. (*Id*.) Mr. Conte argued that the expert's estimated valuation of I Media was necessary to establish the full amount of damages required to "restart and rebuild [his] business." (Tr. 175.) Plaintiff asserted that such testimony and evidence of damages was "not speculative in terms of lost profits." (*Id*.) Instead, he argued it was "highly specific as to what amount of money it's going to take to restart this business, to finance its operations during a minimum of a six-month period in the areas we were distributing." (*Id*.) At that juncture, though the Court noted that it was "aware of no case authority that suggests that you should be permitted to testify and recover by projecting what it would take at this time to restart a business that doesn't exist currently," the Court decided to bifurcate the proceedings, and address the issue of damages at the second stage of trial, in the event that the jury found in plaintiff's favor on the issue of liability. (*Id*. at 176-77.)

After the jury found the County defendants liable on plaintiff's tortious interference with contract claim on June 5, 2012, the Court proceeded to the damages portion of the trial. At that point, plaintiff renewed his request for his expert to testify and present the report on the valuation of I Media. The Court denied plaintiff's request on the grounds that plaintiff failed to identify Mr. Pulchin as a witness in the pretrial order and defendants did not have notice that there would be any expert testimony at trial.[4] Beyond expert testimony, Mr. Conte also requested to present other evidence related to the valuation of I Media during the damages

---

[3] Though plaintiff did not include Mr. Pulchin as a testifying witness in the pretrial order, the expert's report is included as Item Number 116 and titled "I Media Valuation Report by Metis Group." (ECF No. 529.) Plaintiff responded to the County defendants *in limine* motion in a May 23, 2012 letter to the Court. (ECF No. 570.) In that letter, he notes that he inadvertently failed to include Mr. Pulchin as an expert witness in the pretrial order. (*Id.*)

[4] The Court stated: "I'm excluding any testimony by the author of that report since he was not identified as a witness in the pretrial order. And as Mr. Conte said, it was an oversight. Maybe it was, but it's not a minor oversight in a case pending this long. The pretrial order has been pending this long. I don't think it is appropriate to go out and amend a pretrial order to get an expert who the County, I think, had every right to assume would not be a witness. I think that would be highly prejudicial." (Tr. 1128.) The Court also noted that "there are issues . . . with the report in terms of its methodology, in terms of whether a standard under New York law could be sued for lost profits . . . But in any event, based on the lack of notice, I don't think it is appropriate." (*Id*. at 1129.)

stage of the trial, on the grounds that the jury's damage calculation should take into account what it would cost "to have my business put back into the position it was in at that point in time in 2005." (Tr. 1201-02.) Conte maintained that a key part of that cost would be reestablishing and replacing route sales licensing fees — routes that he claimed he could no longer sell as a result of the harm done by the defendants. (*Id.*) The Court stressed that "putting the business in a position that it was" is "a different measure of damages than the New York law allows for that particular claim" (*Id.* at 1203), and requested that the parties submit additional briefing on the issue. (*Id.* at 1209.) Both parties submitted letters to the Court on the damages issue on June 7, 2012. (ECF Nos. 588, 584.)

On June 11, 2012, before the Court instructed the jury on the damages, Conte objected to the Court's instruction on damages on the grounds that it did not allow Mr. Conte "to seek lost profits and/or . . . the consequential damages I could have obtained for the licensing fees from future licenses that I could have sold for I Media." (Tr. at 1226.) The Court stated that in addition to "granting the defendant's motion *in limine*, . . . to preclude the expert testimony on the issue of lost profits, because the expert is not identified in the pretrial order as a witness," the Court also "granted the motion *in limine* to preclude him from making . . . [a] presentation to the jury [regarding the valuation evidence]." (*Id.* at 1226-28.) The Court concluded "that [the expert's] report and the basis for his report would not provide a proper evidentiary basis under New York law for lost profits." (*Id.*) Further, the Court reasoned "in this particular case, where you have a new business — it's essentially a new industry, but essentially in a new area of an industry — that Mr. Conte has proffered no evidence to the Court from which a sufficient basis for lost profits under New York law could be found, even if [the expert's] testimony was accepted." (*Id.*)

The jury returned a verdict on damages on June 11, 2012, awarding plaintiff on the tortious interference with contract claim $3,500.00 in compensatory damages for tortious acts which took place before June 1, 2005, and $700,000.00 in compensatory damages for tortious acts which took place on or after June 1, 2005. The jury also awarded punitive damages in connection with plaintiff's tortious interference with contract claim: $60,000.00 against Emmons; $443,000.00 against Wallace; and $175,000.00 against Falzarano.

Following the jury's verdict, the Court set a briefing schedule for the parties' Rule 50(b) and Rule 59 motions. On June 13, 2012, plaintiff filed a letter motion for a new trial on damages under Rule 59. (ECF No. 597.) The County defendants opposed plaintiff's motion by motion filed on August 13, 2012, (ECF No. 606), and plaintiff submitted an affidavit in further support of his motion, dated August 24, 2012 (ECF No. 608). The County defendants filed their motion for judgment as a matter of law and for a new trial on July 2, 2012. (ECF No. 601.) Plaintiff submitted an affidavit in opposition to the County defendants' motion and in further support of his Rule 59 Motion, dated July 31, 2012, (ECF. No. 607), and the County defendants replied on August 13, 2012. (ECF No. 605.) The Court held oral argument on the motions on September 6, 2012.

Following oral argument, the County defendants filed a letter, dated September 11, 2012 (ECF No. 610), to address certain contentions made by plaintiff in his sur-reply. Plaintiff subsequently submitted letters to the Court regarding the Rules 50(b) and 59

motions on September 12 and 13, 2012 (ECF Nos. 611-613), October 1, 2012 (ECF No. 614) (which the County defendants opposed by letter dated October 5, 2012 (ECF No. 615)), and November 4, 2012 (ECF No. 616). The Court has considered all of the party's submissions in relation to plaintiff's Rule 59 motion for a new trial on damages for the tortious interference with contract claim.

## II. STANDARD OF REVIEW

Rule 59(a) states that a court may grant a new trial in a jury case for any of the reasons "for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). The decision whether to grant a new trial under Rule 59 "is 'committed to the sound discretion of the trial judge.'" *Stoma v. Miller Marine Servs., Inc.*, 271 F. Supp. 2d 429, 431 (E.D.N.Y. 2003) (quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992)). Thus, "[a] new trial may be granted [] when the jury's verdict is against the weight of the evidence." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998). In contrast to a motion for judgment as a matter of law, a court may grant a motion for a new trial "even if there is substantial evidence supporting the jury's verdict." *Id.* at 134. Additionally, "a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." *Id.* (citing *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992)). A court considering a Rule 59 motion for a new trial, however, "must bear in mind [] that the court should only grant such a motion when the jury's verdict is 'egregious.'" *Id.* (citation omitted). For this reason, "'[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (quoting *Atkins v. New York City*, 143 F.3d 100, 102 (2d Cir. 1998)) (alterations in original); *see also Patrolmen's Benevolent Ass'n of N.Y.C. v. City of N.Y.*, 310 F.3d 43, 54 (2d Cir. 2002).

Furthermore, "[w]here the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *Fugazy*, 983 F.2d at 363; *see also DLC Mgmt. Corp.*, 163 F.3d at 134 ("[A] court should rarely disturb a jury's evaluation of a witness's credibility."). Alternatively, when a Rule 59 motion challenges the Court's failure to properly instruct the jury, "[i]t is well-established that a jury charge is erroneous if the instruction misleads the jury as to the proper legal standard, or it does not adequately inform the jury of the law." *Luciano v. Olsten Corp.*, 110 F.3d 210, 218 (2d Cir. 1997) (citation omitted).

Moreover, as it relates to the instant motion, a court may grant a new trial under Rule 59 if an erroneous evidentiary ruling affected a substantial right of the moving party. As Judge Townes explained,

> [I]n order to obtain a new trial on this ground, a litigant must do more than merely voice a disagreement with the court's evidentiary rulings. Rather, [a] motion for new trial on the basis of improper evidentiary rulings will be granted only where the improper ruling affects a substantial right of the moving party.

*Litras v. Long Island Railroad*, No. 02-CV-5168 (SLT), 2006 WL 1455466, at *11 (E.D.N.Y. May 23, 2006) (citations and quotations omitted); *see also LNC Invs. v. First Fidelity Bank*, 126 F. Supp. 2d 778, 787-88 (S.D.N.Y. 2001) (finding that in a

Rule 59 motion based on evidentiary rulings, moving party must demonstrate that the "Court's specified evidentiary rulings . . . were (a) erroneous and (b) adversely affected a substantial litigation right of the [moving party], so that the rulings were 'truly harmful' to the [moving party]").

III. DISCUSSION

In this case, plaintiff requests a new trial under Rule 59 on the grounds that this Court erred in refusing to permit him to present certain evidence to the jury for their consideration when calculating damages for his tortious interference with contract claims. First, the Court will examine the relevant New York law governing damages associated with claims of tortious interference with contractual relations. Then, the Court will consider plaintiff's Rule 59 motion.

A. Relevant Law

Here, plaintiff's claims for tortious interference with contractual relationships—and the damages permitted for such claims—are governed by New York law. *Int'l Minerals and Res., S.A. v. Pappas,* 96 F.3d 586, 595 (2d Cir. 1996) ("*Int'l Minerals I*"). "It is well-settled that, under New York law, a plaintiff in a tortious interference with contract case is entitled to damages in the amount of the full pecuniary loss of the benefits of the contract, and that 'the elements of damages, including consequential damages, [are] those recognized under the more liberal rules applicable to tort actions.'" *Id.* at 597 (quoting *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 197 n.6 (N.Y. 1980)) (alteration in original). Specifically, the Second Circuit has held that a third party who is found liable for tortiously interfering with a contract or a "'prospective contractual relation'" is liable for damages for: "'(a) the pecuniary loss of the benefits of the contract or the prospective relation; (b) consequential losses for which the interference is a legal cause; and (c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.'" *Int'l Minerals I*, 96 F.3d at 597 (quoting Restatement (Second) of Torts § 774A (1977).)

Although New York law permits recovery of consequential damages, such as loss of future profits or loss of goodwill, for tortious interference with prospective contractual relations, s*ee Guard-Life Corp.*, 50 N.Y.2d at 197, a plaintiff is required to meet "'certain stringent requirements of proof' under New York law" to successfully claim such damages. *Sovereign Bus. Forms, Inc. v. Stenrite Indus., Inc.,* No. 00 CIV. 3867 BDP, 2000 WL 1772599, at *13 (S.D.N.Y Nov. 28, 2000) (quoting *Toltec Fabrics, Inc., v. August Inc.,* 29 F.3d 778, 780 (2d Cir. 1994)). To recover lost profits, a plaintiff must "establish both the existence and amount of such damages with reasonable certainty," before the damages issue is even submitted to the jury. *Schonfeld v. Hilliard,* 218 F.3d 164, 172 (2d Cir. 2000) (citing *Kenford Co. v. Cnty. of Erie,* 67 N.Y.2d 257, 261 (N.Y. 1986)); *see also Int'l Minerals and Res., S.A. v. Bomar Res., Inc.*, 5 Fed. Appx. 5, 8 (2d Cir. 2001) ("*Int'l Minerals II*") (citing *Trademark Research Corp. v. Maxwell Online,* Inc. 995 F.2d 326, 332 (2d Cir. 1993) for the proposition that "under New York law, existence of damages must be capable of proof to the level of 'reasonable certainty' before damages issue is even submitted to jury."). Notably, this does not require plaintiff to prove lost profits "with absolute precision," but "they must be 'capable of measurement based upon known reliable factors without undue speculation.'" *Sovereign Bus. Forms, Inc.*, 2000 WL

1772599, at *13 (quoting *Ashland Mgt. Inc. v. Janien,* 82 N.Y.2d 395, 403 (N.Y. 1993)).[5]

Under New York law, "[a] party may not recover damages for lost profits unless they were within the contemplation of the parties at the time the contract was entered into and are capable of measurement with reasonable certainty." *Ashland Mgt.*, 82 N.Y.2d at 403; *see also 16 Casa Duse, LLC v. Merkin*, No. 12 Civ. 3492 (RJS), 2013 WL 5510770, at *14 (S.D.N.Y. Sept. 27, 2013) (awarding consequential damages of $1,956.58, where the tortious interference resulted in a film screening's cancellation, which in turn prevented plaintiff from holding a post-screening reception, which directly resulted in the loss of non-refundable deposit of that amount). Damages that are "the result of other intervening causes . . . cannot be allowed." *Terwilliger v. Terwilliger,* 206 F.3d 240, 248 (2d Cir. 2000) (quotations omitted); *see also Sovereign Bus. Forms,* 2000 WL 1772599, at *8-9 (holding that "plaintiffs' proof of lost sales is speculative in that it does not take into account the effect of intervening causes in the overall decline of American Stenrite's business," and that plaintiffs failed to prove "loss of future profits with any precision or certainty" because they did not present "adequate proof of such loss, nor have they shown that such loss, if any, would be attributable to [defendant's] conduct, given intervening causes in the overall and continuing decline of American Stenritie's business.").

In addition, a tortious interference cause of action requires plaintiff to prove the specific prospective relations with which the defendants interfered, and may not be based on speculative damage to relations with the public as a whole. *See Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 429 (S.D.N.Y. 2008). As a result, claims for lost profits for tortious interference must be based on proof concerning specific prospective relations and must be attributable to interference with a particular contract that was the subject of the tortious interference. *Id.*; s*ee also Guard-Life Corp.*, 50 N.Y.2d at 197.

Notably, the party seeking damages for loss of profit or reputation bears the burden of satisfying these threshold requirements. *Sovereign Bus. Forms*, 2000 WL 1772599, at *13 (quoting *Toltec Fabrics, Inc.,* 29 F.3d at 780).

B. <u>Application</u>

In accordance with the Second Circuit's mandate, the Court will now consider plaintiff's post-trial motion for a new trial on the damages associated with his tortious interference with contract claims under Federal Rule of Civil Procedure 59. Plaintiff contends a new trial is warranted on damages because the Court "erroneously refused to allow the plaintiff the opportunity to fully present damages evidence" to the jury: (1) "related to the numerous contracts he had with his route distributors that were tortiously interfered with by the County defendants,"[6] and (2) related to "licensing fees invested in I Media and lost as a result of the harm done and licensing fees intended to finance his

---

[5] Similarly, damages are recoverable for actual harm to reputation, if that harm is "reasonably expected to result from the interference." *International Minerals I*, 96 F.3d at 597.

[6] Specifically, plaintiff requests to present evidence of "the added distribution costs he must pay today compared to 2005 when those breached contracts were in effect." (ECF No. 607, ¶ 66.) This includes "the additional cost of replacing the 2004/2005 distribution services supply contracts based on present day higher costs," which plaintiff argues constitutes "damages [incurred] as a direct result of the contract breaches that were caused by the defendants." (ECF No. 597 at 1.)

future business operations."[7] (ECF No. 608 ¶ 1.) Plaintiff contends that "the recovery of these damages are [sic] essential to putting the plaintiff back in the position he was in when his business was destroyed and are [sic] essential to the plaintiff's ultimate right, intention and goal of restarting and rebuilding his business again today." (*Id.*) Despite his description at trial of damages for licensing fees as "lost profits" (Tr. at 1226), plaintiff now claims that these damages are "actually lost business capital damages . . . and . . . not lost profits," and maintains that they "can be easily and readily calculated based on prior licensing agreements entered into by the plaintiff and I Media" (ECF No. 608, ¶ 1).

As explained during the trial and below, the Court finds that the damage evidence plaintiff seeks to admit, despite his assertions otherwise, does constitute a request for lost profits or lost goodwill and is impermissibly speculative under New York law. After a thorough review, the Court concluded at trial (and concludes again on this motion) that plaintiff failed to demonstrate the existence of such damages with the requisite level of certainty to allow a jury to consider this type of damages under New York law. As a result, the Court denies plaintiff's motion under Rule 59 for a new trial on damages, and the jury's award of compensatory damages on the tortious interference with contract claims remains intact.

In his briefing papers, plaintiff asserts that "as a consequence of the individual County defendant's tortious interference with plaintiff's contracts with his route distributors, the plaintiff has suffered substantial harm and damages in addition to the consideration paid on those contracts that was invested in I Media's business operations and lost." (ECF No. 607, ¶ 66.) Plaintiff also maintains that he "never argued for lost profits and . . . his additional claim for the replacement of licensing fees financing lost are general damages that go to the ultimate ability of I Media to be put back and even operate on an ongoing basis and that those costs to rebuild and continue operations, and not the specific lost licensing fees, can be determined with reasonable certainty and are not lost profits or speculative." (*Id.* ¶ 68.) In opposition, the County defendants argue that plaintiff "seeks an award of damages that is wholly speculative, not such damages that were actually incurred," on the grounds that the additional damages plaintiff requests "presuppose[] that Plaintiff has printed something to distribute" and there is "no evidence of undistributed publications, therefore, such damages were (and may not be) ever incurred." (ECF No. 606 at 2.) Similarly, County defendants argue that "there was no evidence that "I Media" was an ongoing concern (and has not been since 2005)." (*Id.*)

Despite plaintiff's arguments, as the Court pointed out at trial, under New York law, damages for tortious interference with contracts are not devised to approximate the amount of money it would cost to restart a claimant's business today. Any such approximation is inherently "speculative, possible or imaginary," potentially "remote or the result of other intervening causes," and not "reasonably certain and directly traceable to the breach." *Kenford Co.*, 67 N.Y.2d at 261. That is especially true in this case, given

---

[7] Plaintiff notes that restoring his licensing mechanism would require "new and additional funding, substantially greater than the $1 million initially invested to build I Media in 2005, in order to rebuild and put back I Media to its original position in 2005."

(ECF No. 607, ¶ 66.) Plaintiff maintains that "[t]hese added costs were not lost profits and were foreseeable, not speculative and are capable of being calculated with reasonable certainty." (*Id.*)

that plaintiff's business does not currently exist, and it is unclear what would have happened to the business in the intervening ten years after the tortious acts. In addition, any estimation regarding the amount of money that it would take to reestablish a new business, like I Media, is also inadmissible, because plaintiff's evidence is speculative under New York law. *See Zink v. Mark Goodson Prods., Inc.*, 261 A.D.2d 105, 106 (N.Y. App. Div. 1st Dep't 1999); *Kenford Co.*, 67 N.Y.2d at 261 ("[T]he alleged loss [of future profits] must be capable of proof with reasonable certainty. . . . If it is a new business seeking to recover for loss of future profits, a stricter standard is imposed for the obvious reason that there does not exist a reasonable basis of experience upon which to estimate lost profits with the requisite degree of reasonable certainty.") (internal citations omitted); *see also 24/7 Records, Inc. v. Sony Music Entertainment, Inc.,* 566 F. Supp. 2d 305, 316 (S.D.N.Y. 2008) (noting that "there is no evidence that 24/7 or the LLC ever made a profit, and there is no reliable, non-speculative means of ascertaining whether the business could have become profitable . . . . Accordingly, a lost profits theory of damages may not be presented at trial.").

Further, plaintiff is only entitled to lost profits attributable to a particular contract that was the subject of the tortious interference. *See Guard-Life Corp.*, 50 N.Y.2d at 197. Here, plaintiff fails to demonstrate that the damages he seeks are tied to alleged interference with a particular contract. Instead, the damages he requests are tied intrinsically to the cost of restarting his business — not to the specific contracts with which the County defendants tortuously interfered. Thus, such claims for damages cannot be used as a basis for recovery on the tortious interference with contract claim.

Plaintiff cites to *Trachtebel Energy Mktg, Inc. v. AEP Power Mktg, Inc.*, 487 F.3d 89 (2d Cir. 2007) as support for his argument that he is able "at the very least, to request all the damages directly flowing from the breached contracts interfered with by the defendants." (ECF No. 597 at 1.) In *Trachtebel*, the Second Circuit stated that "lost profits are consequential damages when, as a result of the breach, the non-breaching party suffers loss of profits on collateral business arrangements." *Tractebel*, 487 F.3d at 109. "In New York, a party is entitled to recover this form of lost profits only if (1) it is demonstrated with certainty that the damages have been caused by the breach, (2) the extent of the loss is capable of proof with reasonable certainty, and (3) it is established that the damages were fairly within the contemplation of the parties." *Id.* (citing *Kenford Co.*, 67 N.Y.2d at 261). The Second Circuit also noted that lost profits can be general damages "when the non-breaching party seeks only to recover money that the breaching party agreed to pay under the contract." *Id*. The Circuit noted that in this situation, lost profits constitute general damages because if "the contract [had] been performed, the non-breaching party would have profited to the extent that his cost of performance was less than the total value of the breaching party's promised payments." *Id.*

Plaintiff relies on *Trachtebel* to bolster his claim that the damages he alleges he suffered as a consequence of the County defendants interference with the distribution contracts (that is, the higher cost today of replacing the distribution contracts he held in 2004/2005) were actually general damages, and not speculative or consequential damages. However, as explained above, unlike the damages at issue in *Trachtebel*, the damages plaintiff seeks are not "the direct and probable consequence of the breach" and

9

are not "what the non-breaching party bargained for," and as such, do not constitute general damages. *Id.* at 109-10. Furthermore, the damages plaintiff seeks to introduce also do not qualify as permmissible evidence of lost profits under *Trachtebel,* because, as also explained above, they are not capable of proof with "reasonable certainty" and were not "fairly within the contemplation of the parties." *Id*. As a result, the *Trachtebel* decision weighs against plaintiff's argument that his evidence of damages is admissible.

In sum, because there is no way of proving with "reasonable certainty" the damages Conte requests, the Court finds that they are entirely speculative in nature. Admission of any such evidence would have required the jury to surmise damages based solely on the plaintiff's conjecture regarding where I Media would have been absent the interference, and what the Company would have earned. As a result, the Court correctly found that the evidence of damages plaintiff sought to admit at trial was inadmissible under New York law. Accordingly, given there was no erroneous evidentiary ruling, plaintiff's Rule 59 motion for a new trial on the issue is denied.

### IV. CONCLUSION

For the reasons stated herein and on the record during the trial, plaintiff's Rule 59 motion for a new trial on the issue of damages for his claims of tortious interference with contractual relationships is denied. The judgment in plaintiff's favor will follow.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 2, 2015
   Central Islip, NY


\*\*\*

Plaintiff is proceeding *pro se*. Defendants are represented by Andrew Reginald Scott and Sondra Meryl Toscano of the Nassau County Attorney's Office, 1 West Street, Mineola, N.Y. 11501.